Dear Mr. Jackson:
Your request has been forwarded to me for research and reply. You ask for an Attorney General Opinion concerning (1) whether a sheriff's declaration that a parish jail is unsafe or unfit is binding upon the police jury and thereby relieves the sheriff from his statutorily-imposed duty to operate the parish prison and (2) whether, if the jail is deemed to be fit and secure, the police jury has any recourse to compel the sheriff to resume the operation of the parish prison or jail.
Your letter states that in February 2002, the sheriff of East Carroll Parish unilaterally declared that the East Carroll Parish jail was "unsafe or unfit." There had been no judicial determination that the jail was substandard in any way. Nor had the jail been condemned by any building official or other legal authority. In spite of such a drastic measure, the sheriff persisted in his course of action, transferring all inmates from the parish jail, ordering his deputies and other personnel to vacate the parish jail effective February 25, 2002 and refusing to provide any personnel to operate the parish jail since that time.
Article La. R.S. 15:751 states that "[t]he jail must meet standards of health and decency established by the state division of health." In order to ascertain whether the jail is in compliance with these standards, a health officer or a representative of the health office must conduct periodic inspections of the jail. Your letter does not mention whether before February 2002 a health officer found the prison to be "unfit." Nor does it indicate that a criminologist or other qualified expert found the jail "unsafe." *Page 2 
R.S. 15:704 confers upon the sheriff the power to be "the keeper of the public jail of his parish." This power does not specifically include the authority to declare the jail "unsafe or unfit," but would seem to be within the sheriff's inherent power to operate the jail and to insure that the prisoners are properly cared for, fed, and clothed. Langley v. City of Monroe,582 So.2d 367, (La.App. 2 Cir. 1991). Moreover, further research of La. R.S. 15:706 (A) (1) indicates that whether a jail iis "unsafe or unfit" can be determined by means other than a judicial decree. Arguably, such a determination could best be made by the one who knows the parish prison the best — the sheriff of the parish.
The decision determining the fitness and security of the jail would seem to fall within the discretion of the sheriff. La. R.S.15:706 (A) (1) further provides that:
 [w]henever the jail of a parish is unsafe or unfit for the security of prisoners or is held by judicial decree unfit for the detention of some or all of the inmates, or presents a security risk to a prisoner or other prisoners or to the public, or whenever a particular prisoner presents a security or health risk to himself or other prisoners or to the public, the sheriff of the parish maintaining and keeping the prisoner or prisoners may transfer any prisoner or prisoners to the jail or jails of any other parish by written contract with the sheriff of the other parish.
In this case, based upon his inherent powers to operate the jail and to insure that the inmates are properly cared for, fed and clothed, the sheriff would seem to have the latitude under the statutory scheme to determine whether the jail was a fit and secure place to house inmates. After the sheriff determined that the jail was unsafe and unfit, La. R.S. 15:706(A)(1) gives the sheriff the statutory authority to transfer inmates and discontinue the operation of the jail.
Although we cannot see how the sheriff acted outside the scope of his statutory authority, the police jury could conceivably seek legal action. For one thing, La. R.S. 15:706 provides for transfers "whenever the jail is unsafe or unfit "for thesecurity of prisoners." The police jury could petition the court to determine whether the sheriff made his decision to transfer prisoners to another parish in accordance with La. R.S. 15:706. Another approach that the police jury could take would be to file an action in district court seeking a declaratory judgment action that would allow a court to declare the relative rights between the parties.
Still another possibility might involve filing a suit for mandamus. A writ of mandamus may be directed to a public officer — in this case the sheriff — to *Page 3 
compel the performance of a ministerial duty required by law. Such a duty would in this case involve operating the jail. The final remedy that could be sought would be to turn the matter over to the district attorney for consideration of whether the sheriff may have committed malfeasance in office by making his initial declaration and transfer of prisoners. Despite the recourse that might conceivably be taken, this office is of the opinion that the sheriff acted in accordance with law.
We hope this sufficiently answers your questions, but if we can be of further assistance, please do not hesitate to contact us.
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: _________________________ Christopher D. Matchett Assistant Attorney General